## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. 15-cv-61080-Cohn/Seltzer

ANDREW RUBIN, Ph. D. and NEW
DIRECTIONS HOLDINGS, LLC, on
their own behalf and on behalf of their
patients and residents,

      Plaintiffs,

v.

THE TOWNEHOMES OF DEER CREEK
HOMEOWNERS ASSOCIATION, INC.,
a Florida corporation,

      Defendant.

_____/

**PLAINTIFFS' MOTION TO COMPEL BETTER RESPONSES TO
INTERROGATORIES AND OVERRULE OBJECTIONS, REQUEST
FOR ATTORNEYS' FEES AND EXPENSES FROM DEFENDANT,
MEMORANDUM OF LAW, AND CERTIFICATE OF COUNSEL**

Plaintiffs, through counsel, and pursuant to Rule 37(a)(3)(B), Fed. R.Civ.P., and Local Rule 26.1.H.2., S.D. Fla., move for the entry of an Order to compelling Defendant to respond, or better respond, to Plaintiffs' interrogatories and overrule Defendant's objections. In addition, pursuant to Rule 37(a)(5), Fed.R.Civ.P., Plaintiffs move for expenses and attorneys' fees associated with having to make this motion, and in support state:

**I.      PROCEDURAL BACKGROUND AND FACTS**

**A. Facts**

On May 21, 2015, the Plaintiffs - Dr. Rubin and New Directions Holdings, LLC ("New Directions") - filed a Complaint seeking a declaratory judgment, injunctive relief, and damages for discrimination on the basis of handicap or disability. This discrimination by Defendant and its members has been carried out through, among other things, refusal to provide a reasonable accommodation and interference with Plaintiffs' ability to provide sober housing for people in recovery.  New Directions is a Florida limited liability corporation that provides housing services to young adults with disabilities. Dr. Rubin is a licensed clinical psychologist and the owner of

1

sober housing located at 3167 Lakeshore Drive, Deerfield Beach, Florida.  Plaintiffs' residents are recovering alcoholics or addicts with disabilities who are in need of good housing during their transition from rehabilitation to integrated community living.  Defendant, the Townehomes of Deer Creek Homeowners Association, Inc. ("Defendant" or "HOA"), is a Florida corporation, and imposes restrictive covenants on the homeowners within the association.

Plaintiffs provide housing in two group homes, which are subject to HOA restrictive covenants, to unrelated persons who are recovering alcoholics and addicts and who are currently not illegally using controlled substances, and any other persons with disabilities who want to live in a supportive alcohol- and drug-free environment.[1]  The two homes are located at 425 Lake Point South Lane and 3167 Lakeshore Drive, Deerfield Beach, Florida.  The latter is the subject of this litigation and is referred to by Defendant in its discovery requests as the "Subject Residence," and the other property is referred to as the "425 Residence."  Because of the Defendant's actions described in the Complaint, Plaintiffs and their residents have been and will continue to be injured by the Defendant's discriminatory housing practices and are therefore "aggrieved persons" within the meaning of the Fair Housing Act ("FHA"), as amended, 42 U.S.C. §3602(d).  As such, they have standing to bring this action on behalf of recovering alcoholics and addicts and persons with disabilities.

---

[1] It does not matter whether the Lakeshore Drive residence is labelled a sober home, recovery residence, or a group home for people with co-occurring disorders; housing providers for all such residences are protected by, and have standing under, the FHAA. *Connecticut Hosp. v. City of New London*, 129 F. Supp. 2d 123, 132-133 (D. Conn. 2001) ("The court rejects defendants' contention that the group homes are rehabilitative facilities or counseling centers as opposed to residences . . .  The court declines to accept the argument that, because plaintiffs live in an environment that is conducive to the recovery process, that environment changes the nature of the place where they live from a residence to that of a rehabilitative facility.  If this were the case, then any group living arrangement that facilitated recovery of a handicapped person would lose the protections of the FHA.  *See, e.g., Oxford House, Inc. v. Town of Babylon*, 819 F. Supp. 1179 (E.D.N.Y. 1993) (recognizing the benefits of group living arrangements in the treatment of recovering alcoholics and drug addicts and affording protection under the FHA); *Oxford House, Inc. v. Township of Cherry Hill*, 799 F. Supp. 450 (D.N.J. 1992) (same); *North Shore-Chicago Rehabilitation Inc. v. Village of Skokie*, 827 F. Supp. 497 (N.D. Ill. 1993) (providing FHA protection to group home for traumatically brain-injured adults); *Martin v. Constance*, 843 F. Supp. 1321 (E.D. Mo. 1994) (FHA protection for developmentally disabled adult group home).");  *.Dr. Gertrude A. Barber Center, Inc. v. Peters Township*, 273 F. Supp. 2d 643 (W.D. Pa. 2003).

On December 11, 2014, New Directions entered into a contract to purchase the home at 3167 Lakeshore Drive. The home consists of four bedrooms with up to two beds in each bedroom and can accommodate a total of six residents and a staff person. The residents are not related by blood, marriage or adoption. They live together as the functional equivalent of a family related by blood, marriage or adoption, which allows them to provide one another with continual mutual support as well as mutual monitoring to prevent relapse. Plaintiffs intend to continue renting the sober home to recovering alcoholics and addicts and any other persons with disabilities who want to live in a supportive alcohol- and drug-free environment. The home at 3167 Lakeshore Drive is subject to Article XI of the HOA's restrictive covenants, which provides, in part, that "[n]o commercial activity, trade or business shall be maintained upon [sic] any Unit."

On December 24, 2014, New Directions sent Defendant a request for reasonable accommodation from Defendant's prohibition on operating commercial group homes and cited various cases holding that people with disabilities may have "little choice but to live in a commercial home if they desire to live in a residential neighborhood." Complaint, Exh. A.[2]

---

[2]Group homes such as recovery residences, sometimes referred to as Sober Homes or Oxford Houses, offer the recovering substance abuser a supportive, drug-free living environment with recovering peers, where the risk of relapse is reduced. Without supportive and drug-free living environments, the risk of relapse after discharge from a hospital treatment program is heightened. Marlatt and Gordon, in their classic study on the prevention of relapse, describe the recovery process in therapeutic communities:

> For patients who were neither married nor living with their family, attempts were made to arrange a synthetic or foster family…. Follow-up over a 6-month period indicated that the community reinforcement patients remained more sober than controls, spent more time gainfully employed, with their families and out of institutions, earned twice as much, and spent more time on weekends in socially acceptable activities…. Although attempts to modify the alcoholic's post-treatment environment are difficult and expensive, for many clients, this may be a *sine qua non* of relapse prevention.

> … Only recovering addicts and alcoholics live in the houses; they share expenses, chores, and decisions like a family. Oxford Houses operate on certain principles: democratic governance, economic self-sufficiency, zero drug tolerance (*e.g.*, one drink results in expulsion), and peer self-help. The houses aim to create a new, stable, and drug-free family.

New Directions also applied for a reasonable accommodation from the City of Deerfield Beach's restriction on more than three unrelated persons living together. Complaint, Exh. B. On March 9, 2015, a hearing was held at the City of Deerfield Beach and was attended by Defendant's attorney and numerous residents who were members of the Defendant HOA who voiced their objections to New Directions and its disabled residents living in their neighborhood.

On or about March 15, 2015, New Directions purchased the home at 3167 Lakeshore Drive. On April 7, 2015, over the objections of Defendant and its residents, the City granted New Directions' reasonable accommodation request to the City for five residents, including one staff member. Complaint, Exh. C. (Plaintiffs have requested a rehearing on that decision, which was based on the magistrate's mistaken belief that there were only three bedrooms, whereas there are four.) At around that time, numerous members of the HOA began posting numerous large signs in common areas at or near Plaintiffs' two residences. Those signs, many of which are still standing, included messages such as "New Direction [sic] GO AWAY!!! We Don't Want You Here!" and "New Direction [sic] YOU ARE NOT !!! Welcome Here!" HOA members also began picketing the treatment facility at New Directions for Young Adults, Inc., which is located a short distance from the community. Composite Exhibit D to Complaint. The HOA requires that residents obtain permits from it for signs or banners in the common areas or on other property that the Association is obligated to maintain, repair, or replace. On information and belief, the residents had not obtained permits from the HOA prior to picketing Plaintiffs' residences.

---

Herbert A. Eastman, *War on Drugs or On Drug Users. Drug Treatment and the NIMBY Syndrome*, 5 B.U.Int.L.J. 15, 17-18 (1995). As the court observed in *Oxford House, Inc. v. Township of Cherry Hill*, 799 F. Supp. 450, 465 (D.N.J. 1992):

> Through its enactment of the Federal Housing Amendments [Act ("FHAA")] and the Federal Anti-Drug Abuse Act of 1988, Congress has expressed a strong public policy favoring an end to discrimination in housing on the basis of handicap and favoring the establishment of housing programs for recovering drug addicts and alcoholics. Indeed, the Anti-Drug Abuse Act's provision encouraging the establishment of revolving loan funds by states to make start-up loans to help establish group homes for recovering drug addicts and alcoholics was based specifically on the model of Oxford House. *See* 134 CONG. REC. E 3732 (Daily Ed. Nov. 10, 1988) (remarks of Rep. Madigan). Thus, Congress has directly endorsed Oxford House itself as an organization worthy of public support because of its role in helping to stem the national epidemic of alcohol and drug abuse.

On April 22, 2015, Defendant advised Plaintiffs that their application for a reasonable accommodation as to 3167 Lakeshore Drive was denied because Article XI of the restrictive covenants for the HOA provides, in part, that "[n]o commercial activity, trade or business shall be maintained upon any Unit." Complaint, Exh. E.  Defendant further stated that "THDC has strictly enforced this prohibition on multiple occasions in the past and intends to do so in a uniform fashion in the future."  However, in 2013, Defendant previously granted New Directions a reasonable accommodation as to the 425 Residence, notwithstanding its previous assertion that Plaintiffs' housing constituted a prohibited commercial activity, trade, or business.  Complaint, Exh. F.  Further, there is no prohibition against homeowners renting or leasing property to third parties.  The only difference between Plaintiffs' first request for reasonable accommodation, which was granted, and the more recent one that was denied is that the latter opposition is due to fellow homeowners' prejudicial opposition based upon the disabilities of Plaintiffs' residents.[3]

### B.  Background of Discovery Dispute

1.       On September 1, 2015, Plaintiffs' counsel electronically served Defendant with Plaintiffs' First Request for Production of Documents and Plaintiffs' First Set of Interrogatories.

---

[3]The FHAA prohibits the enforcement of declarations or restrictive covenants that discriminate or have the effect of discriminating on the basis of disability. It also prohibits enforcement of restrictive covenants or deed restrictions to deny, burden or limit the right of persons with disabilities to live anywhere they choose. Thus, those who attempt to enforce a restrictive covenant to prevent individuals with disabilities from residing in a particular neighborhood violate 42 U.S.C. § 3604(f)(1)(B). *Massaro v. Mainlands Section 1 & 2 Civic Assn., Inc.*, 3 F.3d 1472, 1477 (11th Cir. 1993) ("Congress intended to rid the entire housing market of discrimination and homeowners' associations are not expressly omitted from the reach of the [Fair Housing] Act."); *Advocacy Center for Persons with Disabilities, Inc. v. Woodlands Estates Assn.., Inc.*, 192 F. Supp. 2d 1344 (M.D. Fla. 2002) (homeowners' association violated the FHAA when it filed suit in state court to enforce a restrictive covenant to prevent continued occupancy of a group home for disabled adults; homeowners' association had a duty to make reasonable accommodation necessary to afford such adults equal opportunity to use and enjoy dwelling). *Accord Gittleman v. Woodhaven Condominium Assn.., Inc.*, 972 F. Supp. 894 (D.N.J. 1997); *Martin v. Constance,* 843 F. Supp. 1321 (E.D. Mo. 1994); *U.S. v. Scott*, 788 F. Supp. 1555 (D. Kan. 1992); *Deep East Texas Regional Mental Health and Mental Retardation Services v. Kinnear*, 877 S.W.2d 550 (Tex. App. 1994).  Further, in *Schroeder v. De Bertolo*, 879 F. Supp. 173 (D.P.R. 1995), the Court stressed that the FHAA's prohibitions are applicable not only to housing providers such as associations, but also to members of a condominium's board, who could be held personally liable.

Exhibits A and B. Plaintiffs' First Set of Interrogatories consisted of 17 interrogatories and their Requests for Production consisted of 14 requests, plus 4 subparts.[4]

2.      Defendant's responses were originally due October 4, 2015. However, Defendant requested an extension to respond to Plaintiffs' discovery requests, to and including October 15, 2015, which Plaintiffs agreed to. Defendant failed to respond by October 15, 2015, and did not request a further extension on or before that date. On October 18, 2015, Plaintiffs reminded Defendant that it was tardy, and requested that Defendant serve its responses by noon the following day.

3.      On October 19, 2015, Defendant filed its responses. Exhibits E and F.

4.      On that same day, Plaintiffs served Defendant with two Plaintiffs' Motions for Protective Order, D.E. 18 and 19, primarily objecting to the discovery requests for Dr. Rubin's patients' medical and substance abuse records based on confidentiality, and to the production requests being excessively numerous, burdensome and duplicative. (On November 2, 2015, Plaintiffs filed a Declaration by Dr. Rubin in support of the Motions for Protective Order. Exhibit G; D. E. 22.)

5.      On October 22, 2015, this Court directed the parties to confer in person or by telephone by October 28, 2015. D. E. 20.

6.      The parties then agreed to confer by telephone on October 26, 2015.

7.      On October 25, 2015, Plaintiffs sent Defendant an 18-page meet-and-confer letter outlining the deficiencies in most of Defendant's Responses to Plaintiffs' First Request for Production of Documents and Plaintiffs' First Set of Interrogatories, and requested that the parties discuss those issues at the previously scheduled telephonic call on October 26, 2015. Exhibit H.  At that call, the parties discussed Plaintiffs' motions for protective order but were

---

[4] On September 17, 2015, Defendant electronically served Plaintiffs with two sets of interrogatories and two sets of production. Plaintiffs' responses were due October 20, 2015.

Defendant's production requests exceeded 200. *See* Plaintiffs' Motions for Protective Order, D.E. 19 and 19. On September 26, 2015, Plaintiffs' counsel wrote defense counsel a letter asking Defendant to pare down the number of requests. Exhibit C. Defense counsel responded by telephone that Defendant needed more time to consider the request to pare down the number of its production requests and also requested an extension of time to respond to Plaintiffs' discovery requests until October 15, 2015, which Plaintiffs agreed to. On September 27, 2015, defense counsel declined to pare down the number of requests. Exhibit D.

unable to reach agreement. D. E. 21.[5] As to the Plaintiffs' October 25th letter, Defendant requested more time and the parties agreed to confer by telephone on October 29, 2015.

8.      On October 29, 2015, Defendant by email unilaterally cancelled that telephone call, stating that they anticipated having a written response to Plaintiffs' October 25th letter by Friday, October 30, 2015, and suggesting that the parties meet on Monday, November 2, 2015. Those dates came and went without a teleconference. Eventually, the parties conferred by telephone on November 6, 2015, but were unable to reach agreement on the issues raised herein.

9.      On November 9, 2015, Plaintiffs sent Defendant another letter explaining further some requests, offering to further narrow some of the requests, and questioning the sufficiency of Defendant's objections based on work product doctrine and attorney-client privilege:

As to Plaintiff's Request for Production 3, we explained that we are looking for any LIHTC certifications; self-evaluation or transition plans; consent decrees, memoranda of understanding, and records of technical assistance with H.U.D. or D.O.J. You said you weren't aware of any. If so, please state that. If there are, however, please narrow that request to produce any such records since January 1,

---

[5]  On October 28, 2015, Plaintiffs sent Defendant a letter offering two alternatives regarding the patient records, which Defendant later rejected:

**Alternative 1:**
In a good faith effort to narrow our discovery dispute, Plaintiffs propose that the HOA use discovery methods other than its broad production requests and current interrogatories for patient-identifying information for all medical and treatment records. Instead, the HOA should obtain the information through written interrogatories as follows:
1. Please state the number of patients/residents who have received housing at 3167 Lakeshore Drive since January 1, 2015.
2. Please state, by identifying the patients/residents by number (i.e., Patient/resident 1, 2, etc.), whether the patients/residents have clinical diagnoses or personal or family histories for substance abuse and other disorders.
3. Please state, by identifying the patients/residents by number (i.e., Patient/resident 1, 2, etc.), whether current patients/residents have been found with or tested positive for any illegal substances.

**Alternative 2:**
 Alternative 2 is to produce records pertaining to current residents' use of illegal drugs, and a treatment professional's diagnosis of substance abuse or personal or family histories for substance abuse. Further, the names of the individual clients will be redacted.

Exhibit I. Defendant rejected those alternatives. Exhibit J.

2000. If there are any forward-looking compliance records, i.e., records generated before then that remain in effect, please advise and produce same.

As to Plaintiffs' Requests for Production 7, 8, 9, 10, and 14, you can narrow those dates to January 1, 2013 to present.

As to Plaintiffs' Request for Production 5, Plaintiffs are seeking any written reasonable accommodation procedures or policies, and any other written guidelines or policies addressing equal housing opportunities and non-discrimination. If you have no such procedures, policies, guidelines or policies, please advise.

………………

There were various discovery requests for which you asserted work product doctrine and attorney-client privilege, but have not stated whether you actually have any such discovery, or provided information so that Plaintiffs can determine the sufficiency of your assertions.

Exhibit K.

10.     Defendant did not accept the proposals in Exhibit K.

**II.     ARGUMENT**

**A. DEFENDANT'S RESPONSES TO MANY OF PLAINTIFFS' FIRST SET OF INTERROGATORIES ARE INADEQUATE AND ITS OBJECTIONS SHOULD BE OVERRULED**

The following are Plaintiffs' interrogatories, Defendant's responses and objections, and Plaintiffs' Replies as to why Defendant's Responses to many of Plaintiffs' First Set of Interrogatories Are Inadequate and its Objections Should Be Overruled:

**1. Please provide the name, address, telephone number, place of employment and job title of any person who has, claims to have or whom you believe may have knowledge or information pertaining to any fact alleged in the pleadings (as defined in Federal Rule of Civil Procedure 7(a)) filed in this action, or any fact underlying the subject matter of this action.**

**Defendant's Responses[6]:** Current and former employees of Broward County Sheriff's office and/or emergency medical services providers who responded to or were involved with, either directly or indirectly, incidents and/or disturbances involving current or former residents of Plaintiffs' alleged sober residence located within the Association at 425 Deer Creek Lake Point South Lane, Deerfield Beach, Florida. Specific identity and contact information is currently unknown; however, same will be provided upon becoming known.

---

[6] Plaintiffs have redacted only this Defendant's Response and Defendant's Responses to Interrogatory 14 to reflect the parts of the responses at issue. All other Defendant's Responses herein are included in their entirety.

Current and former employees of Broward County Sheriff's office and/or emergency medical services providers who responded to or were involved with, either directly or indirectly, incidents and/or disturbances involving current or former residents of Plaintiffs' alleged sober residence located within the Association at 3167 Deer Creek Lake Shore Drive, Deerfield Beach, Florida. Specific identity and contact information is currently unknown; however, same will be provided upon becoming known.

**Plaintiffs' Reply as to Why Defendant's Responses to Interrogatory 1 Are Inadequate**

As to Interrogatory Response 1, Defendant appears to be claiming that neither its counsel nor Defendant has any knowledge as to BSO employees who may have responded to the subject property.

.........................................................................................................

**5. Identify all complaints or allegations of harassment, discrimination, bias or prejudice, including, but not limited to, those based on race, sex, disability, national origin or sexual orientation, whether formal or informal, oral or in writing, against the Association, the Board, residents, Association employees or agents, or employees of the Association's management or security companies since January 1, 2005.**

**Defendant's Responses**: The Association objects to this interrogatory on the grounds that it is overly broad and not reasonably calculated to lead to the discovery of admissible evidence with regards to temporal scope as this request seeks information predating Plaintiffs' alleged ownership of the Residence by at least 8 years. The Association further objects to this request on the grounds that it is overly broad and not reasonably calculated to lead to the discovery of admissible evidence with regards to temporal scope as the statute of limitations under the Fair Housing Act is 2 years after the occurrence of an alleged discriminatory housing practice and Plaintiffs' have alleged that the Association's purported discriminatory housing practice occurred in 2015. 42 U.S.C.A § 3613(a)(l)(A). In addition, the Association objects to this interrogatory on the grounds that it is overly broad and not reasonably calculated to lead to the discovery of admissible evidence with regards to subject matter as Plaintiffs have not alleged discrimination based on race, sex, national origin, or sexual orientation and the interrogatory, as written, could potentially encompass complaints or allegations of harassment, discrimination, bias or prejudice, both oral and written, formal and informal, made against employees of the Association's management company who do not work at the Association. Moreover, the Association objects to this interrogatory on the ground that it is unduly burdensome as it would require the Association to contact each resident or former resident of the over 150 units within the Association, as well as each employee or former employee of the Association's management company, which provides services to over 200 condominium and

homeowners associations, to determine whether any of these hundreds of individuals have received any complaints or allegations of harassment, discrimination, bias or prejudice, including, but not limited to, those based on race, sex, disability, national origin or sexual orientation, whether formal or informal, oral or in writing since January 1, 2005.

**Plaintiffs' Reply as to Why Defendant's Responses to Interrogatory 5 Are Inadequate**

a.      As to the claim that it is overbroad and not reasonably calculated to lead to the discovery of admissible evidence because it asks for records going back eight years, this Response is without merit. History is always relevant in discovery in intentional discrimination cases such as this. *Village of Arlington Heights v. Metropolitan Hous. Dev. Corp.*, 429 U.S. 252, 267 (1977)(reversing finding of no discrimination in re-zoning residential property, and stressing the importance of the "historical background of the decision," the "specific sequence of events leading up to the challenged decision," "[d]epartures from the normal procedural sequence," and "[s]ubstantive departures ... particularly if the factors usually considered important by the decision maker strongly favor a decision contrary to the one reached") (footnote omitted). *See also, Kimzey v. Wal-Mart Stores*, 107 F.3d 568 (8th Cir. 1997) (evidence of events occurring outside the statute of limitation admissible to illustrate a pattern of discrimination). "Proof of discriminatory motive or intent is critical in civil rights cases … and is frequently accomplished with evidence of prior conduct." *Open Hous. Ctr., Inc. v. Kings Highway Realty*, No. CV-93-0766, 1993 U.S. Dist. LEXIS 15927, at *19 (E.D.N.Y. Nov. 8, 1993) (citation omitted) (collecting cases and holding that prior complaints of racial discrimination were admissible in housing discrimination case); *see also Wyatt v. Sec. Inn Food & Beverage, Inc.*, 819 F.2d 69, 70–71 (4th Cir. 1987) (upholding trial court decision to admit evidence of prior discriminatory conduct as relevant to motive and intent).

Plaintiffs are entitled to go back at least 15 years. *Caron Foundation of Fla., Inc. v. City of Defray Beach*, 879 F. Supp. 2d 1353, 1368 (S.D. Fla. 2012)(considering as historic background Department of Justice warning ten years before to City that the proposed ordinance would violate the law): *Jean v. Nelson*, 711 F.2d 1455, 1492 n. 37 (11th Cir.1983) ("This string of ten years during which Mr. Gollobin could testify to persistent mistreatment was obviously relevant under the historical background factor of *Arlington Heights*. Nevertheless, the district judge cut short the testimony.... yet the citation of authority by the Supreme Court in *Arlington Heights* indicates a ten-year period may well be relevant."); *see also Keyes v. Sch. Dist. No. 1*, 413 U.S. 189, 210 (1973) ("We reject any suggestion that remoteness in time has any relevance to the issue of intent. If the actions of school authorities were to any degree motivated by segregative intent and the segregation resulting from those actions continues to exist, the fact of remoteness in time certainly does not make those actions any less 'intentional.'").

*See also* Section 5 (c) below.

b.      As to overbreadth, Plaintiffs agree to narrow the interrogatory to exclude any such calls prior to January 1, 2012 and "complaints or allegations of harassment, discrimination, bias or prejudice, including, but not limited to, those based on race, sex, disability, national origin or sexual orientation, whether formal or informal, oral or in writing, against <u>residents</u>" about which the Association, the Board, Association employees or agents, or employees of the Association's management or security companies have <u>no</u> actual or constructive knowledge.

c.      As to the discoverability of complaints of bias from protected classes other than the one to which the plaintiffs (or their patients/residents) belong, discrimination against one group can support an inference of discrimination against another. *Fuentes v. Perskie*, 32 F.3d 191, 204 (3d Cir. 1994) (part of plaintiff's burden of proof can be met by showing discrimination against other protected classes of persons); *Robinson v. Jacksonville Shipyards, Inc.*, 760 F. Supp. 1486, 1498 (M.D. Fla. 1991) (court accepted negative comments about black women as probative of discrimination against white woman); *Lam v. University of Hawaii*, 164 F.3d 1186 (9th Cir. 1998) (racist comments about black persons admitted in case of Vietnamese woman suing over race, sex, national origin discrimination); *Strauss v. Microsoft Corp.*, 1995 U.S. Dist. Lexis 7433 (S.D. N.Y. June 1, 1995) (court denied motion in limine to exclude e-mail showing racial animus against blacks in gender discrimination case); *Whidbee v. Garzerelli Food Specialties, Inc.*, 223 F.3d 546, 552 (2d Cir. 2000) (comments against Puerto Ricans and Mexicans are part of hostile environment against blacks); *Forrest v. Dynamic Security, Inc.*, 2002 U.S. Dist. Lexis. 3204 (E.D. La. 2002) (racially derogatory comments may be relevant to female's claim of gender bias). Common sense and everyday experience have shown most of us that a company with discriminatory practices against one group, blacks for example, will be likely to discriminate against multiple protected classes.

d.      As to discoverability of other lawsuits or complaints, such evidence is relevant and certainly discoverable if those lawsuits involve similar claims and can be used to establish a pattern or a habit or routine practice. *See, e.g.*, *Pinchback v. Armistead Homes Corp.*, 689 F. Supp. 541, 545 n.3 (D. Md. 1988), *judgment aff'd in part, vacated in part on other grounds*, 907 F.2d 1447 (4th Cir. 1990) (evidence of a prior agency complaint alleging that defendants had unlawfully discriminated against a black male was relevant to discriminatory intent); *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482 (5th Cir.1990)(In law firm's action against former client for collection of legal fees, the law firm's request for materials related to prior lawsuits against attorneys sought evidence related to habit or routine practice, which was relevant to prove that conduct on particular occasion was in conformity with habit or routine practice); *Johnson v. City of Philadelphia*, 1994 WL 612785 (E.D.Pa.1994)(Information concerning prior lawsuits involving the defendant officers alleging claims similar to those in the present case were discoverable); *Mabel v. Equitable Life Assur. Soc. of U.S.*, 1992 WL 345109 (E.D.Pa.1992)(allowing plaintiff access to all disability claims handled by one of the defendant's employees during the calendar years 1990–1992 because they were relevant to the plaintiff's claim that the defendant breached the terms of his insurance policy as the result of a corporate pattern, practice and/or

policy to deny or dilute the disability claims of policyholders similarly situated to the plaintiff); *Brandon v. Heard*, 140 F.R.D. 328, 330 (M.D.Pa.1991)(grievance complaints that may reveal the existence of a habit are discoverable); *Heyne v. Caruso*, 69 F.3d 1475, 1481 (9th Cir.1995) (holding that prior complaints of discrimination against same decision maker is relevant to show pretext); *Phillip v. ANR Freight Sys., Inc*., 945 F.2d 1054, 1056 (8th Cir.1991) (reversing district court's exclusion of other age discrimination complaints filed against defendant); *Culkin v. Pitney Bowes, Inc*., 225 F.R.D. 69, 71 (D.Conn.2004) (finding permissible plaintiff's request for production of "any and all documents in which defendant is a party and/or named in any administrative action or lawsuit ... involving a claim of FMLA discrimination or retaliation from 2001 to present"; "Evidence of general patterns of discrimination by an employer is clearly relevant in an individual disparate treatment case, and is discoverable pursuant to Fed.R.Civ.P. 26(b)(1)." (quoting *Flanagan v. Travelers Ins. Co* ., 111 F.R.D. 42, 48 (W.D.N.Y.1986))).

e.      The information sought in the interrogatory/request is also relevant because of Defendant's assertion of its Fifth Affirmative Defense, the "business judgment rule," (citing *Bal Harbour Club, Inc. v. AVA Dev*., *Inc*., 316 F.3d 1192, 1994–95 (11th Cir. 2003)). Putting aside whether the "business judgment rule" is a proper defense to a discrimination case such as this, "[u]nder the business judgment rule, courts presume that directors have acted in good faith. A court will not call upon a director to account for his action in the absence of a showing of abuse of discretion, fraud, bad faith, or illegality." *Id*. (citations omitted).

In *Vaughan Furniture Co. v. Featureline Manufacturing Co*., 156 F.R.D. 123, 128 (M.D.N.C.1994), the court held that where a party intends to use an "attorney's opinions as a sword or shield to affect the factfinding process[,]" those opinions are not covered by the work product doctrine. Other courts have held likewise. *Charlotte Motor Speedway, Inc. v. Int'l Ins. Co*., 125 F.R.D. 127, 129-31 (M.D.N.C.1989); *Donovan v. Fitzsimmons*, 90 F.R.D. 583, 588 (N.D.Ill.1981). The same holding applies to assertions of the attorney-client privilege. Courts have held that "As to the attorney-client privilege, the general rule is that the assertion of an advice-of-counsel defense waives that privilege 'as to communications and documents relating to the advice.'" *Minn. Specialty Crops, Inc. v. Minn. Wild Hockey Club, L.P*., 210 F.R.D. 673, 675 (D.Minn.2002) (quoting *SNK Corp. of Am. v. Atlus Dream Entmt. Co*., 188 F.R.D. 566, 570 (N.D.Cal.1999)). "Finding a waiver of the attorney client privilege when the client puts the attorney's advice in issue is consistent with the essential elements of the privilege." *Rhone-Poulenc Rorer, Inc. v. Home Indem. Co*., 32 F.3d 851, 863 (3d Cir.1994); *see also Cincinnati Ins. Co. v. Zurich Ins. Co*., 198 F.R.D. 81, 87-88 (W.D.N.C.2000).

By asserting the good faith defense inherent in the "business judgment rule," Defendant waived any work product protection and attorney-client privilege it had regarding its good faith compliance with the FHA, since the material goes to the heart of the defense.

**6. Identify all occasions on which the Association, the Board, residents, Association employees or agents, or employees of the Association's**

management or security companies have called the City of Deerfield Beach or the Broward Sheriff's Office because of complaints or incidents involving Drew Rubin, New Directions, or the residents at 425 Lake Point South Lane and 3167 Lakeshore Drive, Deerfield Beach, Florida. Describe the date of each call, nature of each call, other persons involved, and the outcome, including whether the police responded, the names of officers responding, and any action taken.

**Defendant's Responses**: The Association objects to this interrogatory on the grounds that it is not limited in temporal scope. Further, the Association objects to this interrogatory on the ground that it is unduly burdensome as it would require the Association to contact each resident or former resident of the over 150 units within the Association, as well as each employee or former employee of the Association's management company, which provides services to over 200 condominium and homeowners associations, to determine whether any of these hundreds of individuals have called the City of Deerfield Beach or the Broward Sheriff's Office because of complaints or incidents involving Drew Rubin, New Directions, or the residents at 425 Lake Point South Lane and 3167 Lakeshore Drive, Deerfield Beach, Florida, and inquire as to the date of each call, the nature of each call, other persons involved, the outcome of each call, including whether the police responded, the names of the officers responding to each call, and any action taken relative to each call.

**Plaintiffs' Reply as to Why Defendant's Responses to Interrogatory 6 Are Inadequate**

a.      Plaintiffs agree to narrow the interrogatory to exclude any such calls prior to January 1, 2012, and to exclude "all occasions on which the residents have called the City of Deerfield Beach or the Broward Sheriff's Office because of complaints or incidents involving Drew Rubin, New Directions, or the residents at 425 Lake Point South Lane and 3167 Lakeshore Drive, Deerfield Beach, Florida" about which the Association, the Board, Association employees or agents, or employees of the Association's management or security companies have **no** actual or constructive knowledge.

**7. Identify all occasions on which Drew Rubin, New Directions, or the residents at 425 Lake Point South Lane and 3167 Lakeshore Drive have been discussed in a Board meeting or by Board members, whether in an open meeting or an executive session or informally, including but not limited to discussions of any allegations or incidents of disability harassment or prejudice, the use of slurs or obscene language or gestures, any other unusual or inappropriate behavior, financial matters, or community participation. Identify the substance of each discussion, the participants in the discussion, the date and time of the discussion, all individuals present, any records kept or notes taken, and any action that was taken.**

**Defendant's Responses:** The Association objects to this interrogatory on the grounds that it is not limited in temporal scope. In addition, the Association objects to this interrogatory to the extent it seeks information discussed during executive sessions with the Association's attorney protected by the attorney-client and work-product privileges.

**Plaintiffs' Reply as to Why Defendant's Responses to Interrogatory 7 Are Inadequate**

a.      As to temporal scope, *see* Plaintiffs' Reply as to Why Defendant's Responses to Interrogatory 5 Are Inadequate, Section 5 (a). Temporal scope begins 1/1/13 if Cobo confirms nothing earlier?

b.      As to the discoverability of executive sessions with the Association's attorney, Defendant waived any work product protection and attorney client privilege it had by asserting the good faith defense inherent in the "business judgment rule." *See* Plaintiffs' Reply as to Why Defendant's Responses to Interrogatory 5 Are Inadequate, Section 5 (e).

c.      If Defendant has no such documents, it needs to so state.

d.      If Defendant has such documents, it needs to so state.

e.      If Defendant has documents for which it claims the attorney/client or work-product privileges, it needs to so state.

**8. Identify all Association policies or procedures, whether formal or informal, concerning disability, bias, or prejudice or the use of prejudicial language.**

**Defendant's Responses**: The Association objects to this request on the grounds that it is not limited in time or scope as Plaintiffs have not provided an applicable time frame with respect to this interrogatory.

Further, the Association objects to this interrogatory on the grounds that it is vague and ambiguous as Plaintiffs' intended meaning for the terms "policies" and "procedures" as these terms are not defined and, as the Association is a not-for-profit entity that is governed by its homeowner's association documents rather than "policies" or "procedures" as a corporate entity or commercial business would, it is unclear as to the information Plaintiffs are seeking with respect to this interrogatory.

**Plaintiffs' Reply as to Why Defendant's Responses to Interrogatory 8 Are Inadequate**

a.      The policies and procedures, whether formal or informal, concerning disability, bias, or prejudice or the use of prejudicial language are discoverable. As to discoverability, the requested documents, if such exist, might affect Defendant's decision-making, method of decision-making, and any references to instances or complaints of discrimination are relevant to Plaintiffs' intentional-discrimination and denial-of-reasonable-accommodation claims. *See,*

*e.g., Bradway v. Am. Nat. Red Cross*, 132 F.R.D. 78, 79 (N.D. Ga. 1990) (compelling production of "business records that reveal internal, non-public Red Cross policies and procedures"); *Parker v. Kroger Co., Inc.*, 1977 WL 90, at *3 (N.D. Ga. Mar. 18, 1977) (compelling production of "historical information as to defendant's internal employment policies and practices"); *Satchell v. FedEx Corp.*, 2005 WL 646058 (N.D. Cal. 2005) (ordering production of documents relating to employer's internal investigation of complaints of discrimination).

**9. Identify, from January 1, 2005, to the present, all employees of any management company or security company who worked at or regularly visited the Townehomes of Deer Creek. For each individual also provide the dates that individual worked at The Townehomes of Deer Creek and that individual's employer while at The Townehomes of Deer Creek**.

**Defendant's Responses**: The Association objects to this request on the grounds that it is overly broad and not reasonably calculated to lead to the discovery of admissible evidence with regards to temporal scope as this request seeks information predating Plaintiffs' alleged ownership of the Residence by at least 8 years. The Association further objects to this request on the grounds that it is overly broad and not reasonably calculated to lead to the discovery of admissible evidence with regards to temporal scope as the statute of limitations under the Fair Housing Act is 2 years after the occurrence of an alleged discriminatory housing practice and Plaintiffs' have alleged that the Association's purported discriminatory housing practice occurred in 2015. 42 U.S.C.A. §3613(a)(l )(A).

**Plaintiffs' Reply as to Why Defendant's Responses to Interrogatory 9 Are Inadequate**

a.      As to temporal scope, *see* Plaintiffs' Reply as to Why Defendant's Responses to Interrogatory 5 Are Inadequate, Section 5(a).

**10. Identify, from January 1, 2005, to the present, all Association Board members and employees. For each individual also provide the dates that individual worked at The Townehomes of Deer Creek.**

**Defendant's Responses:** The Association objects to this request on the grounds that it is overly broad and not reasonably calculated to lead to the discovery of admissible evidence with regards to temporal scope as this request seeks information predating Plaintiffs' alleged ownership of the Residence by at least 8 years. The Association further objects to this request on the grounds that it is overly broad and not reasonably calculated to lead to the discovery of admissible evidence with regards to temporal scope as the statute of limitations under the Fair Housing Act is 2 years after the occurrence of an alleged discriminatory housing practice and Plaintiffs' have alleged that the Association's purported discriminatory housing practice occurred in 2015. 42 U.S.C.A. § 3613(a)(l )(A).

**Plaintiffs' Reply as to Why Defendant's Responses to Interrogatory 10 Are Inadequate**

      a.     As to temporal scope, *see* Plaintiffs' Reply as to Why Defendant's Responses to Interrogatory 5 Are Inadequate, Section 5 (a).

**11. Identify any ownership, purchase, or attempted purchase by the Association of The Townehomes of Deer Creek of units since January 1, 2005. For each such ownership or purchase, identify the date and circumstances of purchase and all purchase terms. For each such attempted purchase, identify the dates of and parties to any relevant negotiations and explain why such purchase was never consummated.**

**Defendant's Responses**: The Association objects to this request on the grounds that it is overly broad and not reasonably calculated to lead to the discovery of admissible evidence with regards to temporal scope as this request seeks information predating Plaintiffs' alleged ownership of the Residence by at least 8 years. The Association further objects to this request on the grounds that it is overly broad and not reasonably calculated to lead to the discovery of admissible evidence with regards to temporal scope as the statute of limitations under the Fair Housing Act is 2 years after the occurrence of an alleged discriminatory housing practice and Plaintiffs' have alleged that the Association's purported discriminatory housing practice occurred in 2015. 42 U.S.C.A. § 3613(a)(l)(A). Moreover, the Association objects to this interrogatory on the grounds that it is over broad and not reasonably calculated to lead to the discovery of admissible evidence with regards to subject matter as information relative to the Association's ownership, purchase, or attempted purchase of units, including information relating to the dates of any attempted purchases, the parties to any relevant negotiations of an attempted purchase, and the reasons why any such attempted purchase was never consummated, since January 1, 2015 are wholly irrelevant and unrelated to Plaintiffs' allegations against the Association of disability discrimination under the Fair Housing Act.

**Plaintiffs' Reply as to Why Defendant's Responses to Interrogatory 11 Are Inadequate**

      a.     As to temporal scope, *see* Plaintiffs' Reply as to Why Defendant's Responses to Interrogatory 5 Are Inadequate, Section 5(a).

**12. Identify and describe any legal action the Association has taken against any unit owner, resident, or business tenant located at The Townehomes of Deer Creek since January l, 2005. Include the date of the action, the reason for the action, the case or docket number (if appropriate), and its final disposition (or current status, if still pending).**

**Defendant's Responses**: The Association objects to this interrogatory on the grounds that it is overly broad and not reasonably calculated to lead to the discovery of admissible evidence with regards to temporal scope as this request seeks information predating Plaintiffs' alleged ownership of the Residence by at least 8 years. The Association further objects to this request on the grounds that it is overly broad and not reasonably calculated to lead to the discovery of admissible evidence with regards to temporal scope as the statute of limitations under the Fair Housing Act is 2 years after the occurrence of an alleged discriminatory housing practice and Plaintiffs' have alleged that the Association's purported discriminatory housing practice occurred in 2015. 42 U.S.C.A. § 3613(a)(l)(A). In addition, the Association Responses to this interrogatory as overly broad and not reasonably calculated to lead to the discovery of admissible evidence with regards to subject matter as this interrogatory, as written, encompasses legal actions taken by the Association against current or former unit owners, residents, or business tenants since January 1, 2005 relative to delinquent maintenance assessments, delinquent rental payments, and any and all other legal actions taken by the Association against any current or former unit owners, residents, or business tenants since January I, 2005, the majority of which would be wholly unrelated and irrelevant to Plaintiffs' allegations of discrimination on the basis of disability. Further, the Association objects to this interrogatory on the grounds that it is vague and ambiguous as the term "legal action" is not defined and it is unclear as to Plaintiffs' intended meaning for same. …Moreover, to the extent Plaintiffs intend the phrase "legal action" to include conversations between the Association and its attorney regarding potential legal remedies available to the Association against unit owners, residents, or business tenants located at The Townehomes of Deer Creek, the Association objects to this interrogatory as an invasion of the attorney-client and work-product privileges.

### Plaintiffs' Reply as to Why Defendant's Responses to Interrogatory 12 Are Inadequate

 a. As to temporal scope, *see* Plaintiffs' Reply as to Why Defendant's Responses to Interrogatory 5 Are Inadequate, Section 5(a).
 b. As to discoverability of complaints or actions of bias against protected classes other than the one to which the plaintiffs (or their patients/residents) belong, discrimination against one group can support an inference of discrimination against another, *see* Plaintiffs' Reply as to Why Defendant's Responses to Interrogatory 5 Are Inadequate, Section 5 (c).
 c. Plaintiffs agree to narrow the interrogatory to exclude "delinquent maintenance assessments [and] delinquent rental payments" that did not involve claims or counterclaims of discrimination against a class protected by the FHAA or ADA.

**13. Identify any action the Association has taken against any unit owner, resident, or business tenant since January 1, 2005, for violations of a lease or of the Association's covenants, bylaws or policies. For each action, identify the**

**individual(s) involved and their race, describe the date and nature of the action, the reason for the action, including any lease provision, bylaw, covenant, or policy that was violated, and the resolution of the action.**

**Defendant's Responses**: The Association objects to this interrogatory on the grounds that it is overly broad and not reasonably calculated to lead to the discovery of admissible evidence with regards to temporal scope as this request seeks information predating Plaintiffs' alleged ownership of the Residence by at least 8 years. The Association further objects to this request on the grounds that it is overly broad and not reasonably calculated to lead to the discovery of admissible evidence with regards to temporal scope as the statute of limitations under the Fair Housing Act is 2 years after the occurrence of an alleged discriminatory housing practice and Plaintiffs' have alleged that the Association's purported discriminatory housing practice occurred in 2015. 42 U.S.C.A. § 3613(a)(l)(A). In addition, the Association Responses to this interrogatory as overly broad and not reasonably calculated to lead to the discovery of admissible evidence with regards to subject matter as this interrogatory, as written, encompasses actions taken by the Association against current or former unit owners, residents, or business tenants since January 1, 2005 relative to delinquent maintenance assessments, delinquent rental payments, rodent infestations, nuisances, structural deficiencies, and any and all other actions taken by the Association against any unit owners, residents, or business tenants since January 1, 2005 for violations of a lease or violations of the Association's covenants, bylaws or policies, the majority of which would be wholly unrelated and irrelevant to Plaintiffs' allegations of discrimination on the basis of disability.

Moreover, the Association objects to this interrogatory as overly broad and not reasonably calculated to lead to the discovery of admissible evidence with regards to subject matter as it seeks information relative to the race of each individual unit owner, resident, or business tenant the Association has taken action against since January 1, 2005, for violations of a lease or of the Association's covenants, bylaws or policies and Plaintiffs allegations against the Association stem from purported discrimination on the basis of disability or handicap. Additionally, the Association objects to this interrogatory on the grounds that it is vague and ambiguous as the term "action" is defined as "the case entitled Rubin, et al. v. The Townehomes of Deer Creek Homeowners Association, Inc., Case No. 15-cv-61080-Cohn/Seltzer, pending in the United States District Court for the Southern District of Florida."

## Plaintiffs' Reply as to Why Defendant's Responses to Interrogatory 13 Are Inadequate

a.      As to temporal scope, *see* Plaintiffs' Reply as to Why Defendant's Responses to Interrogatory 5 Are Inadequate, Section 5(a).

b.      As to discoverability of complaints or actions of bias against protected classes other than the one to which the plaintiffs (or their patients/residents) belong, discrimination against one group can support an

inference of discrimination against another, *see* Plaintiffs' Reply as to Why Defendant's Responses to Interrogatory 5 Are Inadequate, Section 5 (c).

      c.    Plaintiffs agree to narrow the interrogatory to exclude "delinquent maintenance assessments, delinquent rental payments, rodent infestations, nuisances, [and] structural deficiencies" that did not involve claims or counterclaims of discrimination against a class protected by the FHAA.

**14. State all facts that support or may tend to support each of the defenses stated in your Answer to the Complaint in this action.**

**Defendant's Responses:**

..................................................................................................
### FIFTH AFFIRMATIVE DEFENSE

      All decisions made by the Association, which may be considered relevant to the claims and defenses asserted in this action, are protected by the Business Judgment Rule as the Association's board of directors acted in good faith and in a reasonable manner in exercising their business judgment in the performance of their duties. *Bal Harbour Club, Inc. v. AVA Dev., Inc.*, 316 F.3d 1192, 1994–95 (11th Cir. 2003).

..................................................................................................
### SIXTH AFFIRMATIVE DEFENSE

      The Association is entitled to a set-off for any and all collateral sources or monies paid to or for the benefit of the Plaintiffs or otherwise available to the Plaintiffs, if any.

..................................................................................................
### EIGHTH AFFIRMATIVE DEFENSE

      Plaintiffs do not have standing to bring the instant action because its "residents" are not handicapped or disabled within the meaning of the FHAA.

..................................................................................................
### TENTH AFFIRMATIVE DEFENSE

      The Plaintiffs' reasonable accommodation claims are barred because the Plaintiffs' proposed accommodations are not reasonable and necessary to afford handicapped or disabled persons an equal opportunity to use and enjoy housing in the Association's residential neighborhood; persons recovering from drug and/or alcohol addiction (even if they are handicapped or disabled) may reside in any residential home within the Association that is not conducting commercial activity, trade, or business and may choose to live in a residence where all residents abstain from drugs and/or alcohol in any of the Association's residential homes.

..................................................................................................
### TWELFTH AFFIRMATIVE DEFENSE

      Plaintiffs' claims are barred by the doctrine of unclean hands as Plaintiffs and their residents have been and continue to violate the conditions imposed upon them by the City of Deerfield Beach in the Order regarding Plaintiffs' reasonable accommodation request. Specifically, among other things, Plaintiffs and their residents have violated the City of Deerfield Beach's condition or restriction that no residents, other than the one supervisor, shall park a car at the residence and no

use of alcohol or controlled substances without a prescription shall occur in the house, on the property upon which the house is located, or surrounding property.

**Plaintiffs' Reply as to Why Defendant's Responses to Interrogatory 14 Are Inadequate**

a.     Defendant's Responses to Interrogatory 14 assert no facts in support of its Fifth, Sixth, Eighth, Tenth and Twelfth Affirmative Defenses. Further, the Tenth Affirmative Defense fails to state any facts as to why the Plaintiffs' reasonable accommodation claims are barred because the Plaintiffs' proposed accommodations are not reasonable and necessary.

..............................................................................................................

**16. Identify all presentations, discussions, or meetings offered or attended by the Board, the Association or management company employees regarding the Fair Housing Act or other fair housing or civil rights laws**.

**Defendant's Responses:** The Association objects to this interrogatory on the grounds that it is vague and ambiguous as the term "Board" is not defined and it is unclear whether the interrogatory seeks information relative to presentations, discussions, or meetings offered or attended by the "Board," the "Association or management company employees" in their individual capacity or relative to their position with the Association. Additionally, the Association objects to this interrogatory as vague and ambiguous as it is unclear as to Plaintiffs' intended meaning for "other fair housing or civil rights laws." The Association further objects to this interrogatory as vague, ambiguous, and overbroad because, as written, the interrogatory potentially encompasses presentations, discussions, or meetings offered or attended by current or former employees of the Association's management company that do not work at the Association, as the Association's management company provides services to over 200 condominium and homeowners associations. Moreover, the Association objects to this interrogatory on the ground that it is over broad with regard to subject matter as Plaintiffs have brought this action solely under the Fair Housing Amendments Act of 1988 and not under any "civil rights laws." In addition, to the extent this interrogatory seeks information relative to discussions between the Association and its attorney regarding the Fair Housing Act relating to the rendition of legal services, the Association objects to this interrogatory as an invasion of the attorney-client privilege. Further, the Association objects to this interrogatory on the grounds that it is not limited in temporal scope.

**Plaintiffs' Reply as to Why Defendant's Responses to Interrogatory 16 Are Inadequate**

a.     As to the objection that the word "Board" and the terms "other fair housing or civil rights laws" are not defined, the meaning of this word and these terms are obvious in the context of this lawsuit.

b.      As to the objection that it is overbroad with regard to subject matter as Plaintiffs have brought this action solely under the Fair Housing Amendments Act of 1988 and not under any "civil rights laws," *see* Plaintiffs' Reply as to Why Defendant's Responses to Interrogatory 5 Are Inadequate, Section 5 (c).

c.      As to the Association's management company, Plaintiffs agree to narrow the interrogatory to exclude "presentations, discussions, or meetings offered or attended by the Board, the Association or management company employees regarding the Fair Housing Act or other fair housing or civil rights laws" for homeowners and condominium associations located outside of Florida.

**17. Please list in chronological order each and every communication, either in writing or orally, that you had with Dr. Rubin, New Directions, or their agents, residents or employees since January 1, 2012.**

**Defendant's Responses**: The Association objects to this interrogatory on the grounds that it is overly broad, overly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence with regards to subject matter as the interrogatory, as written, encompasses each and every communication, either in writing or orally, that the Association, including its directors, officers, employees, agents, representatives or other persons acting, or purporting to act, on behalf of the Association, had with Dr. Rubin, New Directions, or their agents, residents or employees since January 1, 2012, including casual oral exchanges between the above-mentioned individuals such as "good morning," "good evening," and "hello."

**Plaintiffs' Reply as to Why Defendant's Responses to Interrogatory 17 Are Inadequate**

a.      This interrogatory is limited temporally on its face to all such communication since January 1, 2012, and does not include "casual or exchanges between the above named individuals" such as "good morning," "good evening," and "hello."

WHEREFORE, Plaintiffs respectfully request that this Court find that Plaintiffs have established good cause, grant the relief requested, compel the discovery accordingly, and award costs incurred by Plaintiffs in having to bring this motion.

## Certificate of Good Faith

I hereby certify, pursuant to Federal Rule of Civil Procedure 37(a)(2) and Local Rule 7.1(a)(3) that I have in good faith conferred with opposing counsel in an effort to resolve the dispute without court action but was unable to reach an agreement regarding the dispute.

s/ James K. Green

Respectfully submitted,

s/ James K. Green
Florida Bar No: 229466
John F. Pauly
Florida Bar No: 972746
JAMES K. GREEN, P.A.
Suite 1650, Esperanté
222 Lakeview Ave.
West Palm Beach, FL 33401
(561) 659-2029 (telephone)
(561) 655-1357 (facsimile)
jameskgreen@bellsouth.net
johnpauly@gmail.com
*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via electronic transmission to Scott Bassman, Esq., (sab@csklegal.com) and Joseph Cobo, Esq., (Joseph.Cobo@csklegal.com) Cole Scott & Kissane, P.A., 110 Tower, 110 S.E. 6th Street, Suite 1850 Ft. Lauderdale, FL 33301, this 10th day of November, 2015.

s/ James K. Green